IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER WINKLER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIVE BUSINESS | : | |
| PUBLICATIONS | : | NO. 16-938 |

MEMORANDUM

Dalzell, J.                                                                                                                   August 4, 2016

## I.  Introduction

We consider here defendant Progressive Business Publication's ("Progressive") motion to dismiss plaintiff Heather Winkler's refiled complaint. Winkler is suing her former employer for gender discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. ("PHRA").

For the reasons explained below, we will deny Progressive's motion to dismiss Counts III and IV of the complaint alleging a hostile work environment, but grant Progressive's motion to dismiss Counts I and II as to plaintiff's claims alleging for sex discrimination.

## II.  Standard of Review

A defendant moving to dismiss under Rule 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive such a motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

We need not accept as true the complaint's legal conclusions, and threadbare recitals of the elements of a cause of action will not suffice. Id. Nor are we bound to accept as true legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555. Our Court of Appeals has laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the complaint.

### III.   Factual and Procedural Background

Winkler began working for Progressive in January of 2012 at its Williamsport, Pennsylvania, location as a customer sales representative. Compl. ¶ 22. Six months later, she was promoted to morning manager. Id. at ¶ 23. At some point in the fall of 2013, Progressive hired Cody Rhian to work at Winkler's branch. Id. at ¶ 24. On several occasions over the next nine

months, Winkler reported to management-level representatives at Progressive that Rhian made her uncomfortable. Id. at ¶ 25. Progressive met with Winkler in response to her complaints. Id. at ¶ 26.

On June 20, 2014, Winkler needed change for a five-dollar bill. Id. at ¶ 27. Rhian offered to give her five one-dollar bills in exchange and told her, "I think maybe you need to dance for [the singles] or something." Id. at ¶ 28-29. Rhian then folded the dollar bills, reached underneath Winkler's clothing, and placed the bills between the lower portion of her bra strap and her bare skin. Id. at ¶ 30.

Winkler immediately reported the incident to her co-manager, Jessie Engel, who reported it to the branch manager, Chrissy Bennett. Id. at ¶¶ 31-32. Winkler met with Bennett in her office and reported that she felt violated and uncomfortable returning to work around Rhian. Id. at ¶ 33. Winkler then returned to her station to complete her shift. Id. at ¶ 34. Bennett met with Rhian in her office and then told Winkler that Rhian had admitted to his conduct toward Winkler. Id. at ¶¶ 35-36. Rhian apologized to Winkler and told her that he was an impulsive person, which had gotten him into trouble in the past. Id. at ¶ 37. Winkler told Rhian and Bennett that she was concerned Rhian's impulsive behavior could create more problems in the office. Id. at ¶ 38. Winkler returned to work and completed her shift. Id. at ¶ 39. Rhian was neither sent home nor relocated and continued to work in close proximity to Winkler for the rest of the day. Id. at ¶¶ 40-41. Rhian was asked to re-sign a copy of Progressive's sexual harassment policy, but was not otherwise disciplined. Id. at ¶ 42.

Two days later, Winkler emailed Bennett to inform her that because of the incident with Rhian and Progressive's failure to address her complaints adequately, Progressive had become an unsafe working environment for her and she no longer felt safe or comfortable continuing to

work around Rhian after he had sexually harassed and assaulted her. Id. at ¶¶ 43-44. On June 23, 2014, Progressive responded to Winkler's email to inform her that it wrote up Rhian and that she was free to contact Progressive to discuss further. Id. at ¶¶ 46-47. Winkler responded that she had made her feelings clear as to how she felt violated by Rhian's conduct and she remained uncomfortable having to return to work with him. Id. at ¶ 48. Winkler reminded Progressive that it had failed to ask her how she felt about her safety or whether she thought the disciplinary action taken against Rhian was sufficient. Id. at ¶ 49. Progressive never responded, and Winkler alleges that she was constructively discharged due to Progressive's action or inaction in response to her complaint about Rhian's sexual harassment of her. Id. at ¶¶ 50-51.

Winkler exhausted her administrative remedies under Title VII by filing a timely written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a right-to-sue letter dated November 27, 2015. Id. at ¶¶ 13-20. Winkler also dual-filed a complaint with the Pennsylvania Human Relations Commission. Id. at ¶ 15.

Winkler filed this complaint on February 26, 2016, but after she failed to timely respond to Progressive's motion to dismiss, we dismissed her complaint without prejudice and provided her with a brief window in which to refile her complaint. See May 31, 2016 Order. In compliance with the Court's Order permitting her to refile her complaint provided that she did so by noon on June 7, 2016, Winkler timely refiled her complaint. Id. at ¶¶ 2-3.

In Counts I and II, Winkler asserts claims for gender discrimination in violation of Title VII and the PHRA. Compl. ¶¶ 52-57. In Counts III and IV, Winkler makes claims for hostile work environment/sexual harassment until Title VII and the PHRA. Id. at ¶¶ 58-81.

**IV.     Discussion**

Progressive moves to dismiss Winkler's complaint on both procedural and substantive grounds. First, Progressive argues that Winkler's refiled complaint is untimely because it was not filed within ninety days after she received her right-to-sue letter from the EEOC. Def.'s Mot. to Dismiss ("MTD") Mem. at 2. Second, Progressive argues that Winkler's claims for hostile work environment and gender discrimination fail as a matter of law because the complaint lacks sufficient facts to state a prima facie case. Id. at 2-3. Winkler opposes Progressive's motion. We consider the parties' arguments.

**A.     Whether Winkler's Refiled Complaint Is Time-Barred**

The dismissal of a complaint without prejudice after the statute of limitations has run forecloses a plaintiff's ability to remedy the deficiency underlying the dismissal and refile the complaint, absent tolling. Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005). But this principle turns on the finality of the dismissal. Cardio-Medical Assocs., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 77 (3d Cir. 1983). Ordinarily, an order dismissing a complaint without prejudice is not a final order as long as the plaintiff may cure the deficiency and refile the complaint. Ahmed v. Dragovich, 297 F.3d 201, 207 (3d Cir. 2002). Only when a plaintiff cannot amend or declares his intention to stand on the original complaint does the order become final and appealable. Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976).

Winkler's right-to-sue letter from the EEOC was dated November 27, 2015, and she timely filed suit on February 26, 2016, which Progressive does not argue falls outside the ninety-day window to file suit. Def.'s MTD Mem. at 8. Winkler's refiled complaint, filed on June 6, 2016, was filed outside that ninety-day window, but within the timeframe the Court gave. This Court's May 31, 2016 Order dismissed Winkler's original complaint without prejudice and

5

explicitly permitted her to refile her complaint, so long as she did so by noon on June 7, 2016. Thus, the Court's Order contained a specific provision or condition for reinstatement within a certain time period and was not a final order foreclosing Winkler's ability to remedy the underlying deficiency and refile her complaint.

As we find Winkler's refiled complaint is timely filed, we will deny Progressive's motion to dismiss Winkler's complaint as time-barred.

### B.      Whether The Complaint States A Prima Facie Case For Relief

A hostile work environment claim requires demonstrating that: (1) the employee suffered intentional discrimination because of her sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) there exists respondeat superior liability. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (explaining further that the first four elements establish a hostile work environment and the fifth element determines employer liability). Claims under the PHRA are interpreted co-extensively with Title VII claims. Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006). We consider the totality of the circumstances -- including the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance -- and whether it unreasonably interferes with an employee's work performance. Mandel, 706 F.3d at 168. A "single act of harassment because of sex may be sufficient to sustain a hostile work environment claim if it is of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work." Bedford v. Southeastern Pa. Transp. Auth., 867 F. Supp. 288, 297 (E.D. Pa. 1994). An employer is liable for a hostile work environment where it knows, or should have known, of

the harassment, and fails to take prompt and adequate remedial action. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 294 (3d Cir. 1999) (prompt); Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997) (adequate).

Progressive argues that the misconduct alleged is not sufficiently severe or pervasive because it was a single incident, and a reasonable person would not view the environment as hostile in light of that one incident. Def.'s MTD Mem. at 10, 12. Progressive also argues that Winkler cannot establish respondeat superior liability because Progressive promptly and adequately took action to remedy her complaint. Id. at 14-15.

Accepting the complaint's well-pled factual allegations as true, Winkler has stated a plausible claim to relief on her hostile work environment claim. Although Winkler's complaint focuses primarily on Rhian's conduct on June 20, 2014, she pleads that Rhian had been making her uncomfortable for nine months. Further, the single incident in question was far more than a mere offensive utterance: Rhian placed his hand inside Winkler's bra while telling her she should probably have to dance for the single dollar bills he placed there. This is the type of physically threatening and humiliating conduct that, even though it occurs only once, pleads a plausible hostile work environment claim at this procedural juncture. Further, such an incident would detrimentally affect a reasonable person of the same sex in Winkler's position. Rhian touched Winkler in an intimate area inside her clothing while making sexually charged remarks. Any reasonable woman would be detrimentally affected by such conduct alone, and especially in light of months of objectionable conduct by the same individual.

Winkler has also stated a plausible claim for employer liability. Winkler pleads that Progressive actually knew that Rhian had been making her uncomfortable for months, and knew about the June 20 incident almost immediately after it happened. While Progressive took prompt

action, Winkler's complaint includes factual assertions that Progressive's actions were inadequate because Rhian was permitted to continue working near Winkler for the rest of the day and Progressive failed to address Winkler's concerns about her safety and whether Rhian would be sufficiently disciplined. At this procedural juncture, those claims suffice to state a plausible claim for employer liability.

To prevail in a sex discrimination claim under Title VII, a plaintiff must first establish by a preponderance of the evidence a prima facie case of discrimination by showing that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Mandel, 706 F.3d at 169. An adverse employment action may include constructive discharge, but a plaintiff must show that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subjected to them would resign. Id. This is an objective test. Id.

Progressive argues that Winkler has failed to plead sufficient facts to demonstrate that similarly-situated male employees were treated more favorably than she was, or that she suffered any adverse employment action. Def.'s MTD Mem. at 15-16. Winkler responds that if she were not a woman, she would not have been treated this way, and that Progressive's failure to offer her protection from Rhian, or to relocate him, made her working conditions intolerable and therefore constituted a constructive discharge. Pl.'s Resp. in Opp. at 11.

Even accepting the complaint's well-pled factual allegations as true, Winkler has failed to plead a plausible claim for relief for sex discrimination. Although Progressive's failure to address Rhian's conduct and Winkler's safety may have constituted a constructive discharge, Winkler fails to plead facts sufficient to support her contention that there was any disparate

treatment or that the conduct occurred under circumstances that could give rise to an inference of intentional discrimination. We will therefore dismiss with prejudice Winkler's claims for sex discrimination in Counts I and II.

### V. Conclusion

Winkler's timely-filed complaint contains sufficient factual matter, accepted as true, to plead a plausible claim to relief against Progressive under Title VII and the PHRA for a hostile work environment, but not for sex discrimination. We will therefore dismiss with prejudice only Counts I and II. An appropriate Order follows.

BY THE COURT:

 /s/ Stewart Dalzell, J.
Stewart Dalzell, J.